| | |
|---|---|
| **SIRRANO KEITH BALDEO, and STACEY BALDEO, husband and wife,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**CITY OF PATERSON, COUNCILMAN WILLIAM "BILL" MCKOY, COUNCILWOMAN RUBY N. COTTON, COUNCILWOMAN MARITZA DAVILA, COUNCILMAN MICHAEL "MIKE" JACKSON, COUNCILMAN DOMINGO "ALEX" MENDEZ, COUNCILMAN KENNETH M. MORRIS, JR., COUNCILMAN ANDRE SAYEGH, COUNCILMAN LUIS VELEZ, COUNCILMAN SHAHIN KHALIQUE, COUNCILMAN MOHAMMAED AKHTARUZZAMAN, COUNCILMAN JULIO TAVAREZ, ROMINA M. PASQUAL, ESQ. - CITY ATTORNEY, NELLI POU - BUSINESS ADMINISTRATOR, and JOHN DOES A-Z,**<br><br>    **Defendants.** | Civ. No. 18-5359 (KM) (SCM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on defendants' motion to dismiss the Complaint. Plaintiff Sirrano Keith Baldeo is the founder of a newspaper, the *New Jersey Pulse,* which focuses on local issues in Paterson, New Jersey. Defendant City of Paterson is a municipality that legislates through a city council. The remaining defendants are members of the city council, the city attorney, and the city business administrator.

Mr. Baldeo, a vocal critic of the elected council members, publicly opposed their re-election. As a result, he claims, various council members retaliated against him and engaged in conduct that resulted in a deprivation of

his First Amendment rights. He further alleges that some of the incidents were tortious.

For the reasons stated below, the Complaint's tort claims are dismissed in their entirety, with prejudice, because the plaintiffs have failed to file a notice of tort claim under the New Jersey Tort Claims Act. The tort claims dismissed on these grounds are the third count (breach of fiduciary duty); fifth count (battery); sixth count (assault); seventh count (civil conspiracy); and eighth count (aiding and abetting).

The fourth count, plaintiffs' claim under 42 U.S.C. § 1985(3), is also dismissed. The Complaint does not sufficiently plead the existence of a conspiracy amongst the defendants that was motivated by a racial or class-based discriminatory animus. This dismissal is without prejudice.

As to plaintiff Stacey Baldeo's claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), the motion to dismiss is granted, without prejudice. Ms. Baldeo sues based on the constitutional deprivations allegedly suffered by her husband, plaintiff Sirrano Baldeo. The Complaint does not allege that she independently suffered any constitutional deprivation.

As to plaintiff Sirrano Baldeo's claims under 42 U.S.C. § 1983 and the NJCRA, the defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss the first count (§ 1983) and second count (NJCRA) is granted insofar as those claims are asserted against defendants Romina M. Pasqual and Nelli Pou. As to all other defendants (*i.e.,* the City and its council members), the motion is denied.

# I. Background[1]

## A. Parties

Plaintiff Sirrano Keith Baldeo is the founder of a newspaper called the *New Jersey Pulse*[2] which focuses on issues of local concern to the City of Paterson, New Jersey. (Compl. ¶1). Plaintiff Stacy Baldeo is the spouse of Mr. Baldeo. (*Id.*).

Defendant City of Paterson operates under a Mayor-Council form of government pursuant to the Optional Municipal Charter Law, N.J. Stat. Ann. §§ 40:69A-1 to -210, known more familiarly as the Faulkner Act. (Compl. ¶¶2-3); *see also* N.J. Stat. Ann. § 40:69A-32.[3] Plaintiffs have sued a number of elected council members, including defendants William "Bill" McKoy, Ruby N. Cotton, Maritza Davita, Michael Jackson, Domingo "Alex" Mendez, Kenneth M. Morris, Jr., Andre Sageyh, Luis Velez, Shahin Khalique, Mohammed Akhtgaruzzaman, and Julio Tavarez. (Compl. ¶3).

Plaintiffs have also sued the City of Paterson's attorney, Romina M. Pascual, Esq., and its business administrator, Nelli Pou. (*Id.*).

---

[1] The allegations in the Complaint are treated as true for purposes of the motion to dismiss. For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| DE __ | = | Docket entry number in this case; |
| Compl. | = | Complaint and jury demand (DE 1); |
| Dbr | = | Defendants' motion to dismiss brief (DE 9-2); |
| Pbr | = | Plaintiff's brief in opposition to defendants' motion (DE 13); |
| Rbr | = | Defendants' reply brief (DE 14). |

[2] The *New Jersey Pulse* was previously called the *Paterson Pulse.* (Compl. ¶1).

[3] In a Mayor-Council Faulkner Act municipality, subject to certain statutory exceptions, "administrative or executive functions assigned by general law to the governing body [are] exercised by the mayor, and any legislative and investigative functions assigned by general law to the governing body are exercised by the council." N.J. Stat. Ann. § 40:69A-32(b).

## B. Factual Allegations and Procedural History

Plaintiffs' Complaint arises from their encounters with various council members.[4] On March 15, 2016, Mr. Baldeo attended a council meeting, and addressed "criminal accusations made by Council members" against Joey Torres, the City's former mayor. (Compl. ¶5). Mr. Baldeo accused the council members of having their own "demons." Subsequently, on his Facebook page, he published that the council was corrupt, incompetent, and unworthy of re-election. (Compl. ¶¶5-6). The Complaint does not identify the particular defendant council members who attended that meeting, or the particular ones at whom Mr. Baldeo directed his comments.

On March 22, 2016, Mr. Baldeo again went to Paterson City Hall. (Compl. ¶¶7-9). There, he claims, Jackson "harassed" and blocked him from entering his car. (Compl. ¶7). Jackson and Mr. Baldeo had another confrontation in the "public area" of the "Council chamber." (Compl. ¶8). Jackson had seen Mr. Baldeo's "documents," including one that stated that Jackson "took $140,000 from taxpayers" and "did not pay $38,000 in business taxes." (*Id.*). Jackson proclaimed that when he walked past Mr. Baldeo, Baldeo had "tried to hit him with [his] shoulders," and asked that officers remove Mr. Baldeo. (Compl. ¶9). As a result, Mr. Baldeo was "prevented from speaking and attending the meeting." (*Id.*). Mr. Baldeo claims that Jackson made that false accusation because he did not "want Mr. Baldeo [to speak] about Councilman Jackson at the meeting." (*Id.*).

On April 5, 2016, the Complaint alleges, the council prevented Mr. Baldeo from speaking at a meeting, although other members of the public were allowed to do so. (Compl. ¶¶10-14). Those allowed to speak were supporters of William McKoy, the council president, and Jackson. (*Id.*). Mr. Baldeo, in contrast, had posted on social media that McKoy should not be re-elected. (Compl. ¶10). Other defendant council members were present at this meeting,

---

[4]     Mr. Baldeo has a significant history of litigation against the City and its council members. (Dbr at 14; DE 10).

4

including Jackson, Cotton, Davita, Mendez, Morris, Sageyh, Akhtgaruzzaman, and Tavarez. (Compl. ¶15). Mr. Baldeo alleges that Pascual, the City's attorney, and Pou, the City's business administrator, failed to prevent the council "from censoring" him. (*Id.*).

On April 7, 2016, Mr. Baldeo attended another council meeting. Jackson told Mr. Baldeo to remove his newspaper from City Hall. When he failed to do so, McKoy "dumped all of the newspapers" in the restricted council area. (Compl. ¶¶16-18).

During the meeting, McKoy advised Mr. Baldeo that he would no longer be permitted to film the meetings by placing his camera on a "ledge," although in the past he had been permitted to do so. (Compl. ¶¶19-20). McKoy stated that there was a policy prohibiting recording from that location. The City clerk, however, told Mr. Baldeo that there was no ordinance, resolution, or policy that regulated the use of cameras in the council chamber. (Compl. ¶20).

During a break in the meeting, Mr. Baldeo was again advised that he needed to remove the camera from the "ledge" and that police would escort him from the building if he failed to do so. (Compl. ¶¶21-22). The police officer removed Mr. Baldeo from the meeting. (Compl. ¶22).

Before attending the next council meeting, Mr. Baldeo reached out to the Paterson police chief, the police director, and the Mayor's office to request police protection at the next council meeting. (Compl. ¶23). He was denied police protection, he says, because the police director supported McKoy "and others" for re-election. (*Id.*).

Sometime after April 12, 2016, Mr. Baldeo was stopped by "a man" outside of City Hall, who told him that Sayegh, McKoy, and Jackson "were all waiting to set up Mr. Baldeo by bumping into him, saying that he hit them, and then have him arrested, with all of these elected officials being witnesses for each other." (Compl. ¶24). The Complaint does not contain any further facts relating to this allegation.

Because of these incidents, and because he did not receive police protection, Mr. Baldeo did not attend the council meetings in April and May of 2016. He was thus prevented from doing his job as a journalist. (Compl. ¶25).

On July 1, 2016, Mr. Baldeo went to City Hall and learned that his newspapers had been removed from the table where local newspapers were permitted to be placed for the public. (Compl. ¶26). He learned from the Clerk that McKoy had ordered that the newspapers be removed. (*Id.*). Mr. Baldeo alleges that on July 12, 2016, the council voted to ban Mr. Baldeo from "the list of newspapers" that received information from the council. (Compl. ¶27). As a result, Mr. Baldeo would not receive advance notice of meetings or agendas. (*Id.*). Present at that July 12, 2016 meeting were defendant council members McKoy, Jackson, Cotton, Davita, Mendez, Morris, Sageyh, Velez, and Khalique. (Compl. ¶28). Mr. Baldeo asserts that Pascual and Pou failed to stop the council from censoring him. (*Id.*).

Almost one year later, Mr. Baldeo sent a letter to the council and city clerk, requesting that his newspaper be returned to "the list." (Compl. ¶29). During the July 1, 2017 council meeting, the council allegedly discussed how to keep Mr. Baldeo off the list, but "could not come up with any legal reason." Ultimately, they kept him off the list because they did not like the newspaper's content. (Compl. ¶30). Present at that July 1, 2017 meeting were defendant-council members McKoy, Cotton, Davita, Mendez, Morris, Velez, and Khalique. (Compl. ¶28). Mr. Baldeo claims that Pascual and Pou failed to stop the council from censoring him and "encouraged the Council's illegal retaliatory animus towards Mr. Baldeo." (*Id.*).

At some unspecified time, Mr. Baldeo filed criminal charges against unspecified members of the council. (Compl. ¶32). On August 9, 2017, after a hearing on the criminal charges, McKoy allegedly "slammed his body into Mr. Baldeo, which caused the already disabled Mr. Baldeo to go through at least four or five months of physical therapy." (Compl. ¶33).

Finally, Mr. Baldeo alleges that the council hired a private investigator to follow him and Ms. Baldeo. Ms. Baldeo "twice caught" the investigator "trying

to get close to her." (Compl. ¶34). Mr. Baldeo claims that the former police director told him that Sayegh was one of the individuals "who was involved in going after Ms. Baldeo." (Compl. ¶35).

On April 3, 2018, Mr. and Ms. Baldeo filed an eight-count Complaint asserting the following causes of action:

> First Count: 42 U.S.C. § 1983;
>
> Second Count: New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2(c);
>
> Third Count: breach of fiduciary duty;
>
> Fourth Count: 42 U.S.C. § 1985(3) conspiracy;
>
> Fifth Count: battery against McKoy;
>
> Sixth Count: assault against McKoy;
>
> Seventh Count: civil conspiracy; and
>
> Eighth Count: aiding and abetting.

On June 19, 2018, defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 9-2). Plaintiffs oppose the motion. (DE 13).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Courts in this district have dismissed complaints when the contain improper "group pleading." This type of pleading fails to satisfy Rule 8 "because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) (citing *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."); *Shaw v. Hous. Auth. of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (dismissing complaint because it failed to contain allegations showing how each defendant was liable and noting that "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants.")). "Alleging that 'Defendants' undertook certain illegal acts — without more — injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, 2014 U.S. Dist. LEXIS 105134, at *7 (D.N.J. July 31, 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### III. Discussion

#### A. Tort Claims

Defendants move to dismiss all of the Complaint's state law tort claims because the plaintiffs have not filed a notice of tort claim pursuant to the New Jersey Tort Claims Act.

The New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. § 59:1-1 to 12-3, is the statutory mechanism through which the New Jersey Legislature effected a limited waiver of sovereign immunity. "That waiver is not unlimited, but is bound by the Legislature's declaration of purpose, *see* [N.J. Stat. Ann. §] 59:1-2, and enforced through the application of numerous express limitations embodied in the statute's provisions." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 133 (2013) (alteration added). The New Jersey Supreme Court has stressed that "[f]aithful adherence to the Legislature's intent requires us to be mindful of this essential purpose of the statute[.]" *Id.* at 134. The requirements of the TCA apply when state-law tort claims are brought in federal court. *See Bethea v. Roizman*, No. 11-254 (JBS/JS), 2012 U.S. Dist.

LEXIS 89093, at *40 (D.N.J. June 27, 2012) (holding that plaintiffs "were required to abide by the requirements of state law when filing [common law torts under state law]" against public entity and employees).

The TCA grants public entities and municipalities immunity from liability, subject to certain specific exceptions enumerated in the Act. N.J. Stat. Ann. § 59:2-1(a);[5] *Polzo v. Cnty. of Essex*, 209 N.J. 51, 65 (2012). In other words, a public entity is "'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." *Id.* (quoting *Kahrar v. Borough of Wallington*, 171 N.J. 3, 10 (2002)).

Pursuant to the TCA, a litigant is required to file a notice of tort claim within ninety (90) days of the accrual of the alleged cause of action before he or she can file a complaint against a municipality. N.J. Stat. Ann. § 59:8-8. This notice requirement is "a jurisdictional precondition to filing suit." *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 343 (App. Div. 2004) (quotation and citation omitted); *Pilonero v. Twp. of Old Bridge*, 236 N.J. Super. 529, 534 (App. Div. 1989) ("[T]rial court lacks jurisdiction in light of the failure to file a timely notice of claim."); *see also Thomasian v. N.J. Inst. of Tech.*, 2009 U.S. Dist. LEXIS 7900, at *2-9 n.3 (D.N.J. Feb. 3, 2009) (recognizing requirement of tort claim notice as "integral" to plaintiff's complaint, properly considered on motion to dismiss without converting motion to one for summary judgment).[6]

---

[5]     The statutory definition of "public entity," includes "any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J. Stat. Ann. § 59:1-3. The parties do not dispute that the City of Paterson is a municipality that falls within this definition.

[6]     The better view is that this portion of the motion is actually a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), because the State has conditioned its waiver of sovereign immunity on compliance with TCA procedures. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."); *see also Bethea*, 2012 U.S. Dist. LEXIS 89093, at *19-20 (failure to file notice of claim under TCA resulted in lack of jurisdiction to decide tort claims). That said, courts have, without comment, considered motions to dismiss for failure to file a notice of tort claim under Rule 12(b)(6). *See, e.g., Major Tours, Inc. v. Colorel,* 720 F. Supp. 2d 587, 604, 611 (D.N.J. 2010); *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 600-01 (D.N.J. 2002). The distinction makes no substantive difference in this case.

An action may be brought against a public entity or a public employee only when it is asserted in accordance with the procedure set forth in the TCA. *See* N.J. Stat. Ann. § 59:8-3. A claimant's obligation to file a notice of tort claim as a prerequisite to initiating litigation is "[a]mong the most important limitations that the Act imposes on would-be claimants[.]" *D.D.*, 213 N.J. at 134.

The purposes of a notice of tort claim under the TCA are (1) "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit"; (2) "to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense"; (3) "to afford the public entity a chance to correct the conditions or practices which gave rise to the claim"; and (4) "to inform the [public entity] in advance as to the indebtedness or liability that it may be expected to meet." *Beauchamp v. Amedio*, 164 N.J. 111, 121-22 (2000) (citations omitted).

In keeping with these aims, N.J. Stat. § 59:8-4 sets forth the minimum amount of information that must be contained within a notice of claim:

a. The name and post office address of the claimant;

b. The post-office address to which the person presenting the claim desires notices to be sent;

c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J. Stat. Ann. § 59:8-4; *Gomes v. Cnty. of Monmouth*, 444 N.J. Super. 479, 489 (App. Div. 2016); *Newberry v. Twp. of Pemberton*, 319 N.J. Super. 671, 676 (App. Div. 1999). This provision is "designed to provide the public entity with sufficient information to enable it promptly to evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and also to engage in settlement negotiations prior to the commencement of suit." *Newberry*, 319 N.J. Super. at 675.

Failure to file a notice of claim bars a claimant from recovering against a public entity or public employee. N.J. Stat. Ann. § 59:8-8; *see Velez v. City of Jersey City*, 180 N.J. 284, 291 (2004). Claimants bear the burden of proving that a notice of claim was filed with the public entity. *Hammond v. City of Paterson*, 145 N.J. Super. 452, 455 (1976).

Mr. Baldeo filed one relevant tort claim notice, dated October 12, 2016. (DE 10-5). This notice, according to Mr. Baldeo, substantially complies with the TCA. [7]

---

[7]     Mr. Baldeo also filed two other notices of claim. Neither encompasses any of the factual allegations in the Complaint. One states that a warrant was issued for his arrest when he failed to appear in court; the other relates to an issue with a roadway. (DE 10-4, 10-6).

The October 12, 2016 tort claim notice (DE 10-5) is properly considered on this motion to dismiss, on a number of bases:

First, a tort claim notice, once filed, is a public record, noticeable by the court.

Second, although it was placed before the court by the defendants, Mr. Baldeo does not dispute its authenticity, and in fact relies on the notice to argue substantial compliance. The notice is properly considered on a motion to dismiss as a document that is integral to a state law tort claim against a public entity that would otherwise be entitled to sovereign immunity. *See Marshall v. Keansburg Borough*, 2013 U.S. Dist. LEXIS 164968, at *2 n.1 (D.N.J. Nov. 20, 2013) (concluding that "Tort Claim Notice filed by Plaintiff will also be considered, as it is a document that forms the basis of the state law claims."); *D.B. v. Div. of Youth & Family Servs.*, 2012 U.S. Dist. LEXIS 158253, at *6 n.3 (D.N.J. Nov. 5, 2012) (relying on tort claim notices "because they are integral to Plaintiff's complaint."); *Thomasian*, 2009 U.S. Dist. LEXIS 7900, at *2-9 n.3 (recognizing tort claims notice as "integral" to plaintiff's state law tort claims and can be properly considered on motion to dismiss without converting motion to summary judgment).

Third, and *a fortiori*, the notice is properly considered in relation to a Rule 12(b)(1) jurisdictional motion, which permits the court to consider evidence offered to

The doctrine of substantial compliance will be applied to validate a timely-filed notice which contains a technical defect. *Lebron v. Sanchez*, 407 N.J. Super. 204, 215 (App. Div. 2009) (citations omitted). Substantial compliance "is based on the notion that substantially all of the required information has been given to those to whom notice should be given and that it has been given in a form which should alert the recipient of the fact that a claim is being asserted against the sovereign and the nature and extent thereof." *Williams v. Nat'l Car Rental Sys.*, 225 N.J. Super. 164, 171 (Law Div. 1988).

In order to invoke the equitable doctrine of substantial compliance, a plaintiff must show the following:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

*Lebron*, 407 N.J. Super. at 216. "Cases which have excused strict statutory compliance generally involve claimants who have been diligent in their efforts at compliance." *Sinclair v. Dunagan*, 905 F. Supp. 208, 212 (D.N.J. 2005).

Mr. Baldeo's October 12, 2016 notice appears to have been submitted on a standard form issued by the City of Paterson. (DE 10-5); *see Wood v. Cnty. of Burlington*, 302 N.J. Super. 371, 378 (App. Div. 1997) (ruling that plaintiffs could be required to use defendant township's "specialized notice of claim form"). "Once a public entity adopts a personalized notice of claim form pursuant to N.J. Stat. Ann. § 59:8-6, which requires information that is more detailed than is otherwise required, it is incumbent upon a claimant to provide the information requested in the form." *Navarro v. Rodriguez*, 202 N.J. Super. 520, 529 (Law Div. 1984).

---

rebut jurisdictional allegations. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

The notice does provide Mr. Baldeo's name, mailing address, and home phone number. Many of the items called for by the form, however—involving personal injuries, loss, damages, availability of insurance, etc.—are left blank.

The notice states that an incident occurred on October 11, 2016, at 4 p.m. (DE 10-5 ¶ 3(a)). That incident is described in the notice as follows:

> Council President Bill McKoy ordered that my newspaper be removed from outside the council chamber where the public comes to the meeting. Jane Camble & Sonia Gordon the municipal clerks both stated they have the right to remove the newspapers on the direction of the council president. On Oct 12, on Oct 11th at 4:30 Jane in a heated confrontation insisted I remove the newspaper by orders of the council president-but didn't state his name until the 12th. There is a history since I opposed the council president re-election of him removing my name from notices & mailing and dumping my newspaper out himself for retaliation against me. This violates the Constitution.

(DE 10-5 ¶ 3(c)). While not providing specific information regarding injuries or damages, the notice indicates that Mr. Baldeo seeks five million dollars. *See* N.J. Stat. Ann. § 59:8-4(d), (f).

The incident, as described in the notice, does not encompass the tort claims now alleged in the Complaint.

To begin with, this notice of claim does not, explicitly or by implication, name any of the individual defendants except McKoy. N.J. Stat. Ann. § 59:8-8; *see Velez*, 180 N.J. at 291.[8] McKoy aside, then, Mr. Baldeo's failure to file a notice of claim against any of the individual defendant public employees bars his tort claims against them. The tort claims would therefore have to be dismissed as to the individual defendants, save McKoy, even if the notice were otherwise sufficient.

And the notice is not otherwise sufficient. The next problem with the notice of claim is that it does not encompass the conduct alleged in the tort counts of the Complaint. The assault and battery, to take the most prominent example, allegedly occurred on August 19, 2017, some ten months after Mr.

---

[8]     It refers to city clerks Camble and Gordon, but those individuals are not named as defendants in this action.

Baldeo filed his notice of claim on October 12, 2016. (*See* Compl. ¶33). Other matters described in the Complaint occurred on July 1 and 12, 2016, and July 1, 2017. While some of the incidents related in the Complaint are of a similar nature to the incident described the notice of claim, they are not the same incidents. The specific incident on October 11, 2016 at 4 p.m. that is described in the notice of claim is not part of the Complaint.

Setting aside the specialized requirements of the City's form, this notice of claim also fails to supply the minimum quantum of information required by N.J. Stat. Ann. § 59:8-4. *See Newberry*, 319 N.J. Super. at 680 (finding notice deficient where it "failed to give [public entity] any reasonable clue as to what act or omission might have made it liable for" claimants that were struck by a vehicle running a stop sign.). The tort claims in the Complaint allege assault, battery, civil conspiracy, breach of fiduciary duty, and aiding and abetting. The facts alleged in the notice of claim bear no relation to any of those torts.

Overall, then, this notice of claim fails to apprise the public entity of the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," a "description of the injury, damage or loss incurred," and the persons involved in these unidentified claims. *Cf. Navarro*, 202 N.J. Super. at 530 (Law Div. 1984) (holding that notice did not meet substantial compliance where it did not provide information regarding the nature and extent of injuries.). The substantial compliance doctrine does not save a notice, like this one, that does not come close to meeting the statute's requirements or fulfilling its underlying goals. The doctrine will not, for example, "cure the total omission of an essential element from a claim." *Id.*; *cf. Small v. Dep't of Corrs.*, 243 N.J. Super. 439, 445-47 (App. Div. 1990) (concluding that notice substantially complied with TCA, even though it omitted damages information, where inmate had been medically treated by public-entity defendant, and thus entity had information regarding damages in its possession).

Additionally, in order to invoke the doctrine of substantial compliance, a claimant must provide "a reasonable explanation why there was not strict compliance with the statute." *Lebron*, 407 N.J. Super. at 216. Mr. Baldeo has not proffered any reason for his failure to comply at all, let alone strictly, with the statute. He presumably was aware of the notice requirement, having previously filed notices of claim on various occasions.

Mr. Baldeo, as the claimant, bears the burden of proving that he complied with the tort claim notice requirement. *Hammond*, 145 N.J. Super. at 455. His assertion that the City never advised him of the deficiency of this tort claim notice is therefore without merit.

Finally, I consider whether the dismissal of these tort claims should be with or without prejudice. Because it is too late to file a new notice, I will dismiss the tort claims with prejudice.

The TCA sets forth the following time limitations for filing a notice of claim:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:
>
>> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.59:8-9; or
>>
>> b. Two years have elapsed since the accrual of the claim; or
>>
>> c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

N.J. Stat. § 59:8-8. The TCA provides some relief from the ninety-day filing requirement:

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a

judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby.

N.J. Stat. Ann. § 59:8-9. Once this one-year grace period has elapsed, however, the court lacks jurisdiction to relieve a would-be claimant from his or her failure to timely file a notice of claim. *See, e.g., Iaconianni v. N.J. Tpk. Auth.*, 236 N.J. Super. 294, 298 (App. Div. 1989) ("Because the late notice of claim was filed well beyond the one-year outer limit, the trial court had no jurisdiction to extend the filing period."); *see also Pilonero*, 236 N.J. Super. at 532 ("After the one-year limitation has passed, 'the court is without authority to relieve a plaintiff from his failure to have filed a notice of claim, and a consequent action at law must fail.'") (quoting *Speer v. Armstrong*, 168 N.J. Super. 251, 255 (App. Div. 1979)).

The events related in in the Complaint occurred on various dates from March of 2016 through August 9, 2017. (Compl. ¶33). Any notice of claim, even if immediately filed, would be well beyond the one-year time frame permitted by the TCA. The lack of required notice bars the plaintiffs' recovery as a matter of law. N.J. Stat. Ann. § 59:8-8(a). Accordingly, the dismissal of the tort claims is with prejudice.

In sum, the third count (breach of fiduciary duty); fifth count (battery); sixth count (assault); seventh count (civil conspiracy); and eighth count (aiding and abetting) are dismissed with prejudice as to all defendants.[9]

### B. Conspiracy pursuant to § 1985(3)

Defendants have also moved to dismiss the plaintiffs' 42 U.S.C. § 1985(3) conspiracy claim on Rule 12(b)(6) grounds. Plaintiffs' brief in opposition to the

---

[9] There is no allegation that Ms. Baldeo ever filed a notice of claim with the City on her own behalf. Theoretically, a person asserting a *per quod* claim may claim the benefit of a spouse's notice of claim. *See Milacci v. Mato Realty Co., Inc.*, 217 N.J. Super. 297 (App. Div. 1987) (*per quod* claim permitted where husband's name and date of birth appeared on the notice of claim form timely filed by wife). Here, however, Mr. Baldeo has filed no adequate notice of claim. Accordingly, the tort claims are dismissed as against Ms. Baldeo as well.

motion does not address this claim. For the reasons stated below, defendants' motion to dismiss this count will be granted.

Section 1985 forbids a conspiracy between "two or more persons in any State or Territory, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The elements of a cause of action under Section 1985(3) are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983).

In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1971), the Supreme Court clarified that §1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102; *see Scott*, 463 U.S. at 829 (finding that commercial and economic animus could not form the basis for section 1985(3) claim); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268, 122 L. Ed. 2d 34, 113 S. Ct. 753 (1993); *see also Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) (explaining that second element of § 1985(3) requires "a plaintiff to allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the class was invidious." (citation omitted)). Thus, to sustain a federal conspiracy claim under § 1985(3), plaintiffs must allege that the purported conspirators were motivated by a racial or class-based animus. *Defeo v. Sill*, 810 F. Supp. 648, 658 (E.D. Pa. 1993).

The Complaint contains no factual allegations from which a class-based conspiracy can be inferred. No relevant "class" is identified in the Complaint.

No facts suggest that the defendants, whatever they did, acted out of racial or class-based animus.

Accordingly, the fourth count, plaintiffs' §1985(3) claim, is dismissed pursuant to Rule 12(b)(6). This dismissal is without prejudice.

### C. 42 U.S.C. § 1983 and New Jersey Civil Rights Act

The first count of the Complaint alleges a violation of the plaintiffs' First Amendment rights to free speech and freedom of the press.[10] The second count alleges a violation of analogous state constitutional protections under the New Jersey Civil Rights Act ("NJCRA").

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages and injunctive relief. *See id.*

The New Jersey State Legislature, when it enacted the NJCRA, intended it as an analogue to 42 U.S.C. § 1983, and sought to incorporate existing § 1983 jurisprudence. *Perez v. Zagami*, 218 N.J. 202, 515 (2014); *see also Ramos v. Flowers*, 429 N.J. Super. 13, 23 (App. Div. 2012) (stating that NJCRA was "modeled on the federal civil rights law which provides for a civil action for deprivation of civil rights." (citations omitted)). The NJCRA, N.J. Stat. Ann. § 10:6-2(c), provides that "[a]ny person who has been deprived of any substantive rights, privileges or immunities secured by the Constitution or laws of this State by a person acting under color of law, may bring a civil action for

---

[10] This count, without much elaboration, also refers to a deprivation of due process pursuant to § 1983. The parties' briefing focuses primarily on the First Amendment.

damages." The NJCRA allows a party who has been deprived of substantive due process, equal protection rights, or any privileges or immunities secured under either the Federal or State Constitutions to seek damages and injunctive relief. *See* N.J. Stat. Ann. § 10:6-1, -2(c).

### i. Ms. Baldeo

Defendants move to dismiss Ms. Baldeo's § 1983 and NJCRA claims because she has not pled a deprivation of her own constitutional rights. In response, plaintiffs assert that she was "retaliated against" for her husband's exercise of free speech rights. (PBr at 26). No such theory of liability was pled in the Complaint, however. Defendants' motion to dismiss the first and second counts as to Ms. Baldeo is therefore granted. I enter this dismissal without prejudice to amendment.

To state a claim under § 1983, a plaintiff must prove that he or she (a) suffered the deprivation of a right secured by the United States Constitution or federal law, (b) by a person acting under color of state law. *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Section 1983 is not in itself a source of substantive rights; instead, it provides a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Therefore, in evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708 (1998)).

Section 1983 provides for a cause of action when a state actor retaliates against an individual for engaging in conduct protected by the First Amendment. *See Bradshaw v. Twp. of Middleton*, 145 Fed. App'x 763, 766-67 (3d Cir. 2005). To prevail on a constitutional retaliation claim, a plaintiff must prove that (1) he or she engaged in a constitutionally-protected activity, (2) the

government responded with retaliation, and (3) the protected activity was the cause of the retaliation. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)).

The Complaint does not allege, however, that Ms. Baldeo herself exercised any Constitutional right. To the extent that Ms. Baldeo may be attempting to assert her husband's § 1983 or NJCRA claims, she lacks standing to do so. *See Love v. N.J. State Police*, No. 14-1313 (FLW)(TJB), 2016 U.S. Dist. LEXIS 69562, at *28 (D.N.J. May 26, 2016) ("it is well-established that a spouse has no standing to raise a § 1983 claim, based on violations of her husband's constitutional rights." (citing *Pagan v. Twp. of Raritan*, No. 04-1407 (FLW), 2006 U.S. Dist. LEXIS 63016, at *30 (D.N.J. Aug. 23, 2006) ("To be sure, a third party lacks standing to bring claims under § 1983 for violation of the constitutional rights of another."); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 381 (E.D. Pa. 2002) ("It is well-established that a spouse . . . has no standing to raise § 1983 claims resting on violations of her husband's constitutional rights.")); *see also Norcross v. Town of Hammonton*, No. 04-2536 (RBK), 2006 U.S. Dist. LEXIS 51599, at *5 (D.N.J. July 13, 2006) ("Nothing in the language of § 1983 contemplates recovery by anyone other than the individual who actually suffered the privation of rights.").

In her briefing, Mrs. Baldeo shifts ground. There, she says the defendants retaliated against her for her husband's exercise of his Constitutional rights. Such a claim, if asserted, would face legal hurdles. Federal standing doctrine contains a "general prohibition on litigants phasing another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). I will not, however, opine on a theory that has not been pled in the Complaint. *See Carpenters Health & Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016) (party may not amend complaint in brief opposing a motion to dismiss); *Commw. of Pa. ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic

that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Finally, the Complaint in any event fails to make a sufficient *factual* allegation of retaliation against Ms. Baldeo. It alleges that Ms. Baldeo "twice caught" a private investigator "trying to get close to her." (Compl. ¶34). Mr. Baldeo alleges that the former police director told him that Councilman Sayegh was one of the individuals "who was involved in going after Ms. Baldeo." (Compl. ¶35). Under the pleading standards of *Twombly* and *Iqbal*, those allegations fail to plausibly suggest retaliation against Ms. Baldeo on any legal theory, whether valid or invalid.

Accordingly, the § 1983 and NJCRA claims in Counts 1 and 2 are dismissed as against Ms. Baldeo.

### ii. **Mr. Baldeo**

Defendants move to dismiss Mr. Baldeo's § 1983 and NJCRA claims on standing and related grounds. Citing case law concerning derivative suits brought by shareholders in the corporate context, they say he has not pled an injury distinct from any injury that was suffered by the *New Jersey Pulse*. In opposition, Mr. Baldeo asserts that he is asserting a free speech claim on his own behalf, and "even satisfies the factors necessary for third-party standing." (PBr at 27).

> To establish Article III standing, a plaintiff must have
>
> (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Winer Family Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (citing *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005)); *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

"Even when this constitutional minimum has been met, judicially created prudential limitations may defeat a party's standing to maintain a suit." *The The Pitt News v. Fisher*, 215 F.3d 354, 359 (3d Cir. 2000), *cert. denied*, 531 U.S. 1113, 121 S. Ct. 857 (2001) (citation omitted). "Prudential" considerations have been described as "a set of judge-made rules forming an integral part of 'judicial self-government.' . . . The aim of this form of judicial self-governance is to determine whether the plaintiff is 'a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.'" *Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 225 (3d Cir. 1998) (internal citation omitted and alteration added).

Neither party cites case law that directly addresses the issue presented here. Defendants point to limitations on individual claims or derivative suits that may be brought by individual shareholders in the corporate context. It is not even clear, however, that *New Jersey Pulse* is a corporation. Nor have the defendants identified a case in which state-law limitations on shareholder suits have been employed to limit a newspaper publisher's constitutional claims of deprivation of freedoms of speech, the press, and political participation.

The relevant factual allegations seem to be as follows: (1) on March 22, 2016, Mr. Baldeo was prevented from speaking and attending a council meeting where he intended to disclose information related to an elected official's use of taxpayer money (Compl. ¶9); (2) on April 5, 2016, Mr. Baldeo was again prevented from speaking at a council meeting, when other members of the public who supported the elected council members were permitted to do so (Compl. ¶¶10-14); (3) the *New Jersey Pulse* was "removed" and "dumped" from the area where other local newspapers were kept (Compl. ¶¶16-18, 26); and (4) Mr. Baldeo (or rather his paper, presumably) was removed from "the list of newspapers" that received notifications from the council (Compl. ¶27).

Mr. Baldeo has alleged a redressable injury to his First Amendment rights as a reporter, publisher, and citizen. *See Brown v. Damiani*, 154 F. Supp. 2d 317, 321 (D. Conn. 2001) (finding that reporter had standing to sue

"because he has alleged an injury to his First Amendment rights as a reporter that can be redressed by the relief requested."); *Dow Jones & Co. v. Kaye*, 90 F. Supp. 2d 1347, 1352 (S.D. Fla. 2000) (finding that newspaper publisher demonstrated standing). Mr. Baldeo complains that defendants affirmatively constrained his speech in not permitting him to speak in the public meetings, when other members of the public were permitted to do so, and by preventing his papers from being distributed. The First Amendment recognizes the right to both receive and distribute information. *See, e.g., Stanley v. Georgia*, 394 U.S. 557, 564, 22 L. Ed. 2d 542, 89 S. Ct. 1243 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838--39 (3d Cir. 1996); *cf. Amnesty Int'l v. Battle*, 559 F.3d 1170, 1181 (11th Cir. 2009) (passing out leaflets is an activity protected by the First Amendment). Mr. Baldeo has sufficiently pled an injury to his constitutional right to speak in a public forum and distribute his newspaper.

The First Amendment also recognizes a right of access to public governmental proceedings, like the city council meetings here. That right is guaranteed to the press, but also to members of the citizenry. Because a "major purpose of [the First] Amendment was to protect the free discussion of governmental affairs," *Globe Newspaper v. Superior Ct.*, 457 U.S. 596, 604, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982) (internal quotation marks omitted), the public and press have the right to attend certain types of governmental proceedings. *See, e.g., id.* at 603 (criminal trials); *Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177 (3d Cir. 1999) (state municipal planning meetings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-70 (3d Cir. 1984) (civil trials); *see also Am. Broad. Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) ("once there is a public function, public comment, and participation by some of the media, the First Amendment requires equal access to all of the media or the rights of the First Amendment would no longer be tenable.");

*WJW-TV, Inc. v. City of Cleveland*, 686 F. Supp. 177 (N.D. Ohio 1988) (first amendment right of access to legislative hearings).

As for redressability, the Complaint is short on allegations of actual damages. Still, § 1983 allows for the recovery of nominal damages where a plaintiff's constitutional rights were violated, but the violation did not result in any injury giving rise to compensatory damages. *See Amnesty Int'l*, 559 F.3d at 1177 (permitting § 1983 claim to proceed even though plaintiff had not alleged compensatory damages that flowed from constitutional violation); *see also Paton v. La Prade*, 524 F.2d 862, 871-72 (3d Cir. 1975) ("In a suit for an intentional violation of constitutional rights, it has been held in a § 1983 case that 'nominal damages are proved by proof of deprivation of a right to which the plaintiff was entitled.'" (citation omitted)).[11]

Granting Mr. Baldeo every reasonable inference, he has sufficiently pled a First Amendment violation that he has standing to assert. The motion to dismiss Mr. Baldeo's § 1983 and NJCRA claims is therefore denied.

### iii. City of Paterson

Defendant City of Paterson moves to dismiss the remaining Constitutional claims of the Complaint on the basis that plaintiffs have not pled any policy or custom that caused a constitutional violation.

It is true of course that the City cannot be held liable by *respondeat superior* for actions of its employees or agents. Rather, "for municipal liability to attach, any injury must be inflicted by 'execution of a government's policy or custom.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010) (quoting *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978)). In *Monell*, the Court held "it is [only] when execution of a government's policy or custom, whether made by lawmakers or by those whose

---

[11]    § 1983 also allows for the recovery of punitive damages in the event that Mr. Baldeo can show a "malicious and wanton disregard for [his] constitutional rights even in the absence of actual damages." *Paton*, 524 F.2d at 872; *see Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Whether defendants' conduct meets this standard is a matter entrusted to the discretion of the fact finder. *Dillon v. Coles*, 746 F.2d 998, 1002 n.4 (3d Cir. 1984).

edicts or acts may fairly be said to represent official policy, inflicts the injury that the government entity is responsible under § 1983." *Id.* at 694 (emphasis added); *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009).

Here, however, Mr. Baldeo has alleged that the unconstitutional actors were committed directly, by the policymakers themselves. The Complaint alleges that the council members embarked on a course of conduct to deprive him of his First Amendment rights of expression and participation in the council's own public meetings. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). Those factual allegations suffice to plausibly suggest that he has a claim against the City. *See Andrews v. Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) ("To obtain a judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged.").

The motion to dismiss the § 1983 and NJCRA claims against the City on *Monell* grounds is therefore denied.

### iv. Claims against Council Members

Defendants also move to dismiss the § 1983 and NJCRA claims as against the defendant council members. Defendants argue that the individual council-members are public officials, and plaintiffs have alleged claims against them in their official capacities. The plaintiffs, demur, claiming that they are pursuing personal-capacity causes of action. The Complaint, however, does not specify either one.

The parties have gotten bogged down in Eleventh Amendment case law that has no real application here. *See* Def. Br. 21 (citing *Hafer v. Melo,* 502 U.S. 21, 25 (1991)). The personal/official capacity distinction has great significance where, as in *Hafer,* the defendant is an official of the State who, if sued in his or her official capacity, would partake of the state's Eleventh Amendment immunity. Generally speaking, however, the State's immunity does not extend to municipalities. *See Lake Cnty. Estates v. Tahoe Reg. Planning Agency*, 440 U.S. 391, 400–01 (1979) ("the Court has consistently refused to construe the

[Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'"). *A fortiori,* it does not extend to municipal officials.

To sue an official solely in that person's official capacity, as the defendants point out, is really just another way of suing the governmental unit of which that person is a part. *See Hafer,* 502 U.S. at 25. Where nothing but the council member's status is alleged, the real party in interest is the City, and the official may be dropped as a superfluous defendant. This Complaint, however, does not merely sue these officials for being officials. It alleges that the council members themselves performed unconstitutional acts. While not a model of clear pleading, those allegations are sufficient to suggest that the plaintiffs, as they say in their briefs, intended to sue the council members in their personal capacities. I will deem them to have done so.

The motion to dismiss the § 1983 and NJCRA claims against the council member defendants is denied.

### v. Pou and Pascual

Finally, I address § 1983 and NJCRA allegations as they relate to Pou and Pascual, the City attorney and business administrator. The Complaint lumps them together with the other defendants, but does not adequately allege that they are responsible for any deprivation of Constitutional rights.

"In order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco,* 430 F.3d 140, 151 (3d Cir. 2005). In other words, each defendant "must have personal involvement in the alleged wrongdoing." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal,* 556 U.S. at 676 ("Because vicarious or supervisor liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Each government official is liable only for his or her own conduct. The Supreme Court has rejected the notion that liability falls on an

official who had only "knowledge" of or "acquiesced" in another's conduct. *See id.* at 683.

The allegations against Pou and Pascual are simply too scant. The Complaint alleges, or sometimes implies, that they were present at council meeting, but failed to prevent the council "censoring" Mr. Baldeo or omitting his publication from the list of newspapers that receive official notices. (Compl. ¶¶10-15, 27-28). The persons who allegedly possessed the authority to act, and did so, were the council members. The Complaint fails to allege that the City attorney and business manager took any wrongful action, aided the Council in doing so, or were empowered to prevent the Council from allegedly exercising its authority in an unconstitutional manner.

Accordingly, defendants' motion to dismiss the remaining Constitutional claims of the Complaint as against Pou and Pascual is granted.

## IV.   Conclusion

For the reasons stated above, the third count (breach of fiduciary duty); fifth count (battery); sixth count (assault); seventh count (civil conspiracy); and eighth count (aiding and abetting) are dismissed in their entirety with prejudice for failure to file a notice of tort claim pursuant to the New Jersey Tort Claims Act.

The conspiracy claim under 42 U.S.C. § 1985(3) is dismissed without prejudice.

Ms. Baldeo's 42 U.S.C. § 1983 and New Jersey Civil Rights Act claims are dismissed without prejudice.

Mr. Baldeo's 42 U.S.C. § 1983 and NJCRA claims are dismissed as to defendants Pou and Pascual only.

An appropriate order follows.

Dated: January 18, 2019

**Kevin McNulty**
**United States District Judge**